UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RONALD COURTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:10-1157 |
| ) | Judge Trauger/Bryant |
| WALDEN SECURITY, ) | |
| ) | |
| Defendant. ) | |

TO: The Honorable Aleta A. Trauger

## REPORT AND RECOMMENDATION

Defendant Walden Security has filed its motion for summary judgment (Docket Entry No. 39). Plaintiff Courts has filed his response in opposition (Docket Entry No. 45). Defendant has filed a reply (Docket Entry No. 49).

For the reasons stated below, the undersigned Magistrate Judge recommends that defendant's motion for summary judgment be granted and the complaint dismissed with prejudice.

## Statement of the Case

Plaintiff Ronald Courts, who is proceeding pro se, has filed this employment discrimination case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.. Plaintiff alleges that his employment as a security officer with defendant was wrongfully terminated on January 21, 2010, due to his race and age. Plaintiff is a 52-year-old African-American.

Defendant has filed an answer denying liability (Docket Entry No. 12).

## Standard of Review

A party may obtain summary judgment by showing "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(a); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine dispute of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed.R.Civ.P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson, 477 U.S. at 248.  In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Summary of Pertinent Facts**

Plaintiff Courts was employed as a security guard with defendant Walden Security from February 2007 until his termination in January 2010. Plaintiff was assigned to work at office buildings owned by the State of Tennessee and located in downtown Nashville. Defendant Walden Security provided security officers for these buildings pursuant to a contract with the State.

Between July 26, 2007, and December 22, 2009, plaintiff Courts was the subject of twelve disciplinary write-ups for various alleged workplace infractions (Docket Entry No. 42-3). These infractions included tardiness or attendance problems (July 26, 2007, December 30, 2008, and January 13, 2009), improper uniform infractions (August 6, 2007 and November 6, 2008), leaving his assigned post in violation of policy (October 12, 2007 and December 22, 2009), sleeping on his post (October 17, 2007), profanity and raising voice in the workplace (August 6, 2008), failure to follow post orders (August 6, 2008) and "misconduct/insubordination" involving heated arguments with fellow officers (January 7, 2009 and January 8, 2009).

Plaintiff's employment was initially terminated in October 2007 after his supervisor allegedly observed him sleeping at his post. Plaintiff, however, denied that he had been sleeping, offered an explanation, and asserted that the supervisor had been mistaken in thinking that plaintiff was asleep. Plaintiff sought reinstatement and thereafter was allowed to return to his employment.

Plaintiff Courts, then and now, disagreed with and disputed a number of the disciplinary write-ups referenced above. At least four of the "Employee Counseling Records" evidencing these occurrences indicate that plaintiff Courts refused to sign the write-up form when requested to do so. On another, plaintiff Courts wrote the words "not true, not true" above his signature, suggesting that he disagreed with the summary of events appearing on this write-up form (Docket Entry No. 42-3 at 6).

The event that immediately resulted in plaintiff's termination occurred on January 18, 2010. On that date, plaintiff Courts and his supervisor, Shannon O'Connor, who is white, became involved in a heated dispute concerning plaintiff Courts's lunch break. Supervisor O'Connor's account of this event, as recorded in the Incident Report (Docket Entry No. 42-1 at 2), stated that plaintiff Courts

> became irate and began to berate me angrily and loudly, with lots of pacing and arm waving. At one point he began to move towards me pointing and yelling, in a ever more aggressive manner, to which

4

> I responded by telling him to 'back away from me,' as I felt threatened. He back[ed] up and said I had threatened him.

(Docket Entry No. 42-1). Mr. Courts's account, as recorded on his written report, states in part that

> we got into a disagreement and we went back and forth and Supervisor O'Connor threaten[ed] me that if I walk up on him he was going to use force and I said to Supervisor O'Connor that I was nowhere near you. We where (sic) talking.

(Docket Entry No. 42-2).

Another Walden employee, Darrell Peak, reported the foregoing encounter between plaintiff and O'Connor to Shannon Meffert, defendant's Human Resource Manager for the Nashville branch office. Ms. Meffert reviewed the Incident Report that Mr. O'Connor prepared, and on January 19, 2010, she met with plaintiff Courts and asked him to prepare a report of his version of this incident. Ms. Meffert thereafter reviewed the records of plaintiff Courts's previous disciplinary infractions and met with Gary Fitzgerald, defendant's Nashville General Manager. Ms. Meffert, in the affidavit filed in support of defendant's motion for summary judgment, testified that she and Mr. Fitzgerald made the decision to terminate plaintiff Courts's employment because of his reported misbehavior with Supervisor O'Connor on January 18, 2010, and his past history of disciplinary infractions. She terminated Mr. Courts for these reasons on January 21, 2010 (Docket Entry No. 42

5

at 2-3).

Plaintiff Courts on January 25, 2010, filed a charge of employment discrimination based upon his race and age with the EEOC, and he received a right-to-sue letter dated November 29, 2010 (Docket Entry No. 1 at 6-7).

In opposition to defendant's motion, plaintiff Courts has filed his six-page response to defendant's statement of undisputed facts (Docket Entry No. 45). Plaintiff's response contains the acknowledgment of a Notary Public which states that the foregoing response was "subscribed and sworn to before me in my presence" on October 19, 2011.

In his response, plaintiff Courts states that his first supervisor with Walden Security, named Anderson, "was establishing a hostile working environment based on race because his manner conveyed 'superiority' instead of equality." Plaintiff states that he heard Anderson making racist remarks to a white Walden guard about "blacks getting hung on ropes," and that plaintiff reported this incident "but nothing was done." (Docket Entry No. 45 at 3). Plaintiff states that he was thereafter removed from the building where he had previously been working.

Although plaintiff Courts acknowledges that a write-up about his tardiness was warranted, he states that other Walden supervisors lodged written infractions against him in "retaliation against me for reporting Anderson's racist and hostile behavior

6

(incidents reported) to white supervisors."[1] (Id.)

Plaintiff Courts states in his response that he continued to receive written disciplinary write-ups in 2008 for uniform infractions and going to another building during his lunch break, but that white security officers were not written up for the same behaviors. (Id. at 4). Plaintiff Courts states that when he became involved in an argument with a white male officer regarding a parking space plaintiff Courts was written up but the white officer was not.

Describing the January 18, 2010, incident that immediately preceded his termination, plaintiff Courts states that he "felt threatened by O'Connor when he moved towards me." He further states that "O'Connor lied in his report and the matter was not investigated fairly or equally." However, plaintiff admitted in his deposition that he did not know what steps defendant had taken to investigate this incident (Docket Entry No. 40-2 at 27 and 34). Plaintiff Courts states that Supervisor O'Connor was not placed on suspension, but that he was. He further states that Supervisor O'Connor was not terminated but that plaintiff Courts was. He states that "the investigations were always one-sided and white supervisors were given credibility over me."

Finally, in his response plaintiff Courts states: "I was

---

[1] Plaintiff did not assert retaliation in his charge before the EEOC (Docket Entry No. 1 at 7) nor does he assert a claim for retaliation in his complaint. (Id. at 3).

7

replaced by a younger white female and told (from her personally) that she was replacing 'Ronald Courts.'" (Docket Entry No. 45 at 7).

In his deposition, when asked why he believed he had been the object of discrimination based upon race, plaintiff Courts testified: "Well, white supervisor." (Docket Entry No. 40-2 at 28). When asked in followup to state the facts upon which he based his claim of racial discrimination, plaintiff continued:

> That's basically it. A white supervisor. All – all my incidents have been with who? White supervisors, or white – white officers. It's like I'm – you know, I'm a – I'm an older black man, and it's like I'm just getting harassed by white officers, or white supervisors.

(Docket Entry No. 40-2 at 29).

When asked if he thought that Supervisor O'Connor's decision not to relieve plaintiff for lunch was based upon his race, plaintiff responded: "What else would it be?" (Docket Entry No. 40-2 at 31). When asked if he had evidence that Supervisor O'Connor's actions were based upon race, plaintiff responded: "No, I don't have any evidence." (Id.) Finally, plaintiff was asked the basis for his claim that he had been replaced at Walden Security by a younger white female officer. Plaintiff testified that a younger white female had said as much to him. He testified:

> Oh, she was – she was – she was running off – she was, I guess, saying something, telling people that Ronald – Ronald Courts would no longer be here, that I'll be here at his post full-time now – from now on out.

8

(Docket Entry No. 40-2 at 30). However, when asked this female officer's name, plaintiff could remember neither her name nor the date when she allegedly made this statement. (Id.)

## **Analysis**

Plaintiff has made a claim that defendant Walden Security discriminated against him based upon his race and age (Docket Entry No. 1), violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.

Plaintiff has not shown direct evidence of intentional race discrimination by the defendant. See, e.g., Amini v. Oberlin Coll., 440 F.3d 350, 359 (6th Cir. 2006) (direct evidence "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions"). Because plaintiff Courts has not shown direct evidence of discrimination, the three-step burden-shifting analysis is applied. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this analysis, plaintiff must first set forth a *prima facie* case of discrimination. Once plaintiff does so, the burden shifts to the defendant employer to articulate some legitimate, nondiscriminatory reason for its actions. If the defendant employer carries this burden, plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. (Id.)

A *prima facie* case for employment discrimination based

9

upon circumstantial evidence requires that the plaintiff prove four elements: (1) that he was a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that he was replaced by someone outside the protected class or was treated differently than a similarly situation, nonprotected employee. DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004). Plaintiff Courts has stated facts regarding the first three elements of his claim: he is an African-American, his employment with defendant Walden Security was terminated, and he was qualified for the position of security officer. However, plaintiff Courts has failed to produce admissible evidence on the fourth prong of his *prima facie* case: that he was replaced by someone outside the protected class or was treated differently than similarly situated, nonprotected employees.

Plaintiff's only evidence of the identity of his replacement consists of his own testimony regarding hearsay statements by an unidentified "younger female white officer" on a date that plaintiff Courts could not remember (Docket Entry No. 40-2 at 30). This testimony by plaintiff Courts is clearly hearsay pursuant to Rule 801, Federal Rules of Evidence, and is therefore inadmissible. Rule 802. In addition, plaintiff likewise has failed to identify any similarly situated employee of a nonprotected class with a comparable record of disciplinary write-ups who was not terminated.

10

Even if one were to assume that plaintiff had established a *prima facie* case of discrimination, defendant Walden Security has articulated a legitimate, nondiscriminatory reason for its actions. Plaintiff does not dispute that he received multiple disciplinary write-ups for tardiness and violations of the employer's uniform policy. He also does not dispute that he was engaged in multiple heated arguments with fellow employees that resulted in disciplinary write-ups, although plaintiff argues that he was provoked by actions or statements by the other employees involved. Finally, plaintiff does not deny that he was engaged in a heated argument with Supervisor O'Connor, including gestures that could be fairly interpreted as physically threatening. Plaintiff does, however, assert that Supervisor O'Connor was the aggressor in this final incident rather than the plaintiff. Defendant Walden Security has thus shown that there was a legitimate, nondiscriminatory reason for plaintiff's termination. See Reeves v. Swift Trans. Co., 446 F.3d 637, 641-42 (6th Cir. 2006).

At the third step of the burden-shifting analysis, plaintiff Courts has again failed to carry his burden. Plaintiff has not demonstrated facts that would show by a preponderance of the evidence that defendant's reasons for terminating him were a pretext for discrimination. From his testimony, plaintiff argues that his multiple disputes at work all arose with white supervisors and other employees, and, therefore, these disputes must be

11

motivated by racial discrimination. In the absence of some supporting evidence of racial discrimination, plaintiff's arguments are insufficient to show by a preponderance of the evidence that defendant's stated reasons for his termination were pretexts for discrimination.

For the reasons stated above, the undersigned Magistrate Judge finds that plaintiff's claim of discrimination based upon race must fail, and that defendant's motion for summary judgment should be granted.

For the same reasons, plaintiff's age discrimination should fail. Under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., a plaintiff's *prima facie* case of age discrimination consists of four categories of evidence. Tuttle v. Metro. Gov't of Nashville, 474 F.3d 307, 317 (6th Cir. 2007). Plaintiff must prove that: (1) he was 40 years or older; (2) that he was qualified for the particular position; (3) that he was subjected to adverse employment action; and (4) that he was replaced by a younger individual. Id. Assuming plaintiff has proven the first three elements of his claim, he has not shown through admissible evidence that he was replaced by a younger individual, or, in the alternative, that similarly situated younger employees were treated more favorably than he was. As discussed above, plaintiff's deposition testimony that he was told by an unnamed "younger female white officer" that she had been hired by

defendant to replace him is inadmissible hearsay.  Therefore, plaintiff has likewise failed to produce evidence to establish the fourth required element of a *prima facie* case of age discrimination.  For this reason, the undersigned Magistrate Judge finds that plaintiff's claim that he was discriminated against based upon his age should fail.

### **RECOMMENDATION**

For the reasons stated above, the undersigned Magistrate Judge **RECOMMENDS** that defendant Walden Security's motion for summary judgment should be **GRANTED**, and the complaint **DISMISSED** with prejudice.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from service of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court.  Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any responses to said objections.  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).

**ENTERED** this 17th day of April 2012.

            <u>s/ John S. Bryant</u>
            JOHN S. BRYANT
            United States Magistrate Judge